A & F CONSTRUCTION COMPANY, INC. *v.* ZONING
BOARD OF APPEALS OF THE CITY OF
WEST HAVEN ET AL.
(AC 19387)

Mihalakos, Zarella and Dupont, Js.

Argued April 24—officially released October 3, 2000

*Leonard A. Fasano*, for the appellant (plaintiff).

*Brian G. Enright*, for the appellee (named defendant).

*Opinion*

ZARELLA, J. The plaintiff, A & F Construction Company, Inc., appeals from the judgment of the trial court dismissing its appeal of the denial of its variance application by the defendant zoning board of appeals of the city of West Haven (board). On appeal, the plaintiff claims that the trial court improperly (1) refused to find that the lot was irrevocably committed to a use as a residential lot prior to the adoption of the zoning regulations in 1995, (2) applied the doctrine of merger and (3) failed to find that the denial of the variance amounted to a confiscation in violation of the Connecticut constitution. We affirm the judgment of the trial court.

The following facts and procedural history are necessary to the disposition of this appeal. The plaintiff is the owner of an unimproved lot in West Haven. On July 14, 1997, the plaintiff applied for variances to build a single-family house on the lot. In 1995, West Haven adopted zoning regulations that required a minimum lot size of 8000 square feet in an R-2 residential zone. Additionally, the regulations required ten foot side yards and minimum frontage of sixty feet.

The lot that was the subject of the variance request was 4000 square feet and had forty feet of frontage. The plaintiff sought a variance to the side yard requirements to permit side yards of five feet and eight feet.

Additionally, the application sought a variance to the frontage and lot size requirements.

At the board hearing, Frank Furmento, president of the plaintiff company, testified that the lot was purchased in early 1996 and that the plaintiff realized that the lot would need a variance. At the variance hearing, the plaintiff presented an assessor's map that showed the property as a separate lot. Additionally, Furmento testified that the plaintiff paid taxes to the town as a building lot.

The board denied the application. The plaintiff appealed in a timely fashion to the trial court which, after finding that the plaintiff was an aggrieved party, dismissed the appeal.[1]

I

The plaintiff claims first that the court improperly found that the lot was subject to the 1995 zoning regulations. The plaintiff claims that the vacant lot located in a residential zone was irrevocably committed to residential development so as to qualify it as a preexisting use and not subject to subsequently enacted zoning regulations. We disagree.

The defendant argues that General Statutes § 8-2 protects preexisting nonconforming uses from subsequently enacted zoning regulations if the property is irrevocably committed to this use. The plaintiff claims that it demonstrated that the parcel was irrevocably committed to use as a single-family dwelling.

The burden is on the plaintiff to demonstrate that the lot was a preexisting nonconforming use, or that it was irrevocably committed to the particular use when West Haven adopted its zoning regulations in 1995. "A non-conforming use is merely an existing use the contin-

---

[1] We granted the plaintiff's petition for certification to appeal.

uance of which is authorized by the zoning regulations. . . . Such a use is permitted because its existence predates the adoption of the zoning regulations. . . . It is well established that [t]o be a nonconforming use the use must be actual. It is not enough that it be a contemplated use [or] that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use. . . . The plaintiff bears the burden of proving the existence of a nonconforming use." (Citations omitted; internal quotation marks omitted.) *Francini* v. *Zoning Board of Appeals*, 228 Conn. 785, 789, 639 A.2d 519 (1994).

The parties agree that the property was a vacant lot when the zoning regulations were adopted in 1995 and when the plaintiff purchased the lot in 1996. The fact that, prior to the enactment of the 1995 zoning regulations, the proposed development of the lot may have been lawful or that when the lot was purchased, development was contemplated fails to demonstrate the existence of a nonconforming use. See id., 789–90. The court, therefore, properly concluded that the plaintiff failed to demonstrate the existence of a nonconforming use. Nor can the plaintiff successfully argue that the lot was irrevocably committed to a particular use prior to the adoption of the zoning regulations in 1995 and, therefore, that it is afforded protection under § 8-2. "[T]o be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose." *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 399, 426 A.2d 784 (1980). No such evidence was offered at the administrative hearing.

Alternatively, the plaintiff requests that this court create a "good faith extension of the law" to require

the zoning board of appeals to grant a variance that would allow the plaintiff to make use of the parcel in the most "minimally intrusive use available in that zone." The law is well established in Connecticut that variances can be granted by boards only when an unusual hardship or difficulty would result by applying the zoning ordinances to a specific parcel of land. General Statutes § 8-6.[2] Further, § 8-6 does not allow for the granting of a variance where it is inconsistent with the intent of the ordinance or adversely affects the public health, safety or welfare. It is not the function of this court to adopt an extension of the law that is contrary to long-standing Supreme Court precedent.

We therefore conclude that the court did not improperly find that the 1995 zoning regulations applied to the lot.

## II

The plaintiff next claims that the court improperly applied the merger doctrine. We disagree.

---

[2] General Statutes § 8-6 (a) provides: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter; (2) to hear and decide all matters including special exceptions and special exemptions under section 8-2g upon which it is required to pass by the specific terms of the zoning bylaw, ordinance or regulation; and (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. No such board shall be required to hear any application for the same variance or substantially the same variance for a period of six months after a decision by the board or by a court on an earlier such application."

The trial court commented that "although you cannot require a merger . . . value exists in both subject parcel and an adjoining parcel which would be enhanced by sale of the subject property to the adjoining owner or vice versa." The court merely referred to the merger doctrine in its memorandum of decision because it was a topic of discussion at the zoning hearing[3] and in noting the similarity of the facts in *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 537 A.2d 1030 (1988), to the facts of the present matter.

Neither the court nor the board applied the merger doctrine or relied on it in dismissing the appeal. We therefore conclude that the plaintiff's claim is without merit.

### III

The plaintiff's final claim is that the court failed to find that the denial of the variance amounted to a taking

---

[3] At the hearing, the following colloquy occurred:

"[Jim Hill, Planning and Development Commissioner]: You have a series of 40 [foot] lots. You understood in the regulations at the time acquired which are the current regulations that we're under and you're familiar with those regulations as you have done business in this city for a number of years. You merged . . . those 40 [foot] lots and one 57 [foot] lot to create lots that would conform to the regulations. You did that both as a partner in [the plaintiff company] and as an individual owner. You conveyed the 57 [foot] lot to [the plaintiff] so that the merge could happen and a conforming lot could be created. Correct? Where the same ownership situation, hypothetically speaking, well not hypothetically, but it's the same situation, [the plaintiff] owns [lot] 243 and you own [lot] 242. Was there ever any consideration to doing with [lot] 242 and [lot] 243 what you did on Grove Place with the 57 [foot] lot and the 40 [foot] lots?

"[Plaintiff's Counsel]: Mr. Hill, if I may, whether there is or is not and I'll answer correctly and there is not, it is relatively irrelevant. If I own a piece of property with my wife and myself and I own a piece of property next door, and both are nonconforming . . . the law is that you have to combine nonconforming lots on the same title. They do not merge under any way, shape or form. They're just based upon that.

"[Mr. Hill]: Point well taken, I'm asking these questions for the education of the board who may not be familiar with what went on because the issue was before the planning commission not before the [board]."

within the meaning of article first, § 11, of the Connecticut constitution.[4] We disagree.

Our Supreme Court has held that a taking occurs "by a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." *Textron, Inc.* v. *Wood*, 167 Conn. 334, 346, 355 A.2d 307 (1974); see *Tamm* v. *Burns*, 222 Conn. 280, 284, 610 A.2d 590 (1992).

"The plaintiff may prevail on his claim of a constitutional deprivation if the board's denial of the variance constituted a taking, either as a practical confiscation of his property or by application of a balancing test. . . . As we have recently reiterated, however, the plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination. . . . To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow *any* reasonable alternative use of his property." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Francini* v. *Zoning Board of Appeals*, supra, 228 Conn. 792.

We are not persuaded that the board's denial of the plaintiff's application for a variance to build a single-family residence rules out any reasonable use of his property. The board concluded only that construction of a dwelling with variances for lot size, frontage requirements and side yard requirements would not be in harmony with the general intent of the ordinances. The plaintiff has not sustained its burden of proof, how-

---

[4] Article first, § 11, of the Connecticut constitution provides: "The property of no person shall be taken for public use, without just compensation therefor."

ever, that the board will not allow any reasonable use of its property.[5]

We conclude, therefore, that the denial of the variance did not constitute a taking within the meaning of article first, § 11, of the Connecticut constitution.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] Furthermore, the court found that the lot had some value. No evidence was presented by the plaintiff to demonstrate that the cost of the lot to the plaintiff did not reflect the reduced value occasioned by the adoption of the 1995 zoning regulations.