[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
STATEMENT OF APPEAL
The plaintiff, the Fort Trumbull Conservancy, LLC (conservancy), appeals from the decision of the defendant, the New London planning 
zoning commission (commission), approving the application submitted by CJ Fort Trumbull Office, LLC (applicant). The conservancy brings this appeal pursuant to General Statutes §§ 8-8, 22a-19 and 22a-20.
 BACKGROUND
On September 19, 2002, the applicant submitted an application for special use permits, site plan approval and coastal site plan review for the property known as the Fort Trumbull area. (Return of Record [ROR], Exhibit 1.) The application proposed to update an existing building by converting it into office and retail space, and reducing the number of parking spaces already onsite (office project). (Id.)
The commission held a public hearing on October 4, 2001, which was continued until November 1, 2001, and was concluded on November 8, 2001. (ROR, Exhibits NN, WW, CCC.) At the public hearing dated October 4, 2001, the conservancy filed a notice of intervention to raise environmental concerns pursuant to General Statutes §§ 22a-19 and22a-20. (ROR, Exhibit X.) On November 29, 2001, the commission approved the application with conditions. (ROR, Exhibit KKK.) In support of its decision, the commission made the following findings: (1) the proposed office project is consistent with the applicable goals and policies contained within General Statutes § 22a-92 and includes all reasonable measures to mitigate any adverse impact on both the coastal resources and future water-dependent activities; (2) the proposal is consistent with the Connecticut Coastal Management Act; (3) the proposal is consistent with the special permit objectives and site plan objectives found in the municipality's regulations; (4) the proposal complies with CT Page 2593 the New London flood plain management ordinance and the requirements of the Federal Emergency Management Agency; (5) the proposal is consistent with the goals and objectives of the New London plan of conservation and development; and (6) the proposal is not likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water, or other natural resources of the state. (ROR, Exhibit DD.)
The decision was published in The Day on December 3, 2001. (ROR, Exhibit JJJ.) The conservancy, thereafter, filed the present appeal alleging that the commission's decision fails to be supported by substantial evidence in the record.
 JURISDICTION
Appeals to the Superior Court from a planning and zoning commission decision are governed by General Statute § 8-8. "There is no absolute right of appeal to the courts from a decision of an administrative agency . . . Appeals to the courts from administrative [agencies] exist only under statutory authority . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." (Citations omitted; internal quotation marks omitted.) Brookridge District Assn. v.Planning Zoning Commission, 259 Conn. 607, 611-12, 793 A.2d 215
(2002).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). Under Connecticut law, an association may obtain representational standing to bring suit on behalf of its members as long as the association meets these requirements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." (Internal quotation marks omitted.)Connecticut Associated Builders Contractors v. Hartford,251 Conn. 169, 185, 740 A.2d 813 (1999).
In the case at bar, the conservancy presented testimony from Thelma Brelesky along with a copy of a deed to support the assertion that one of its members lives within 100 feet of the office project. (Plaintiff's Exhibit 1.) This satisfies the first requirement. Lewis v. Planning Zoning Commission, 62 Conn. App. 284, 297, 771 A.2d 167 (2001). As CT Page 2594 to the second requirement, the conservancy's primary function is to preserve the Fort Trumbull area and this appeal directly correlates to the conservancy's goals. The second requirement is fulfilled. Fort TrumbullConservancy, LLC v. Planning Zoning Commission, Superior Court, judicial district of New London, Docket No. CV 02 0557775 (August 28, 2002, Hurley, J.T.R.). Finally, the conservancy is seeking injunctive relief and the reversal of the commission's decision and, therefore, satisfies the final prong of the representational standing test.Connecticut Associated Builders Contractors v. Anson, 251 Conn. 202,210, 740 A.2d 804 (1999). The court finds that the conservancy has representational standing to pursue this appeal on behalf of its members.
Timeliness and Service of Process
An "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." General Statutes § 8-8
(b). Subsection (e), now subsection (f), further provides that "[s]ervice of legal process for an appeal under this section shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8 (e).
The record contains an affidavit of publication, attesting that notice of the commission's decision was published on December 3, 2001 in TheDay newspaper. (ROR, Exhibit JJJ.) On December 17, 2001 this appeal was commenced by service of process upon the chairmen of the commission and the New London city clerk. Accordingly, the court finds that this appeal was commenced timely by service of process upon the proper parties.
 SCOPE OF REVIEW
"Courts are not to substitute their judgment for that of the [commission] . . . and decisions of local [commissions] will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995). "The Superior Court's scope of review is limited to determining only whether the [commission's] actions were unreasonable, arbitrary or illegal." RR Pool Patio, Inc. v. Zoning Board ofCT Page 2595Appeals, 257 Conn. 456, 470, 778 A.2d 61 (2001). "The burden of proof to demonstrate that the [commission] acted improperly is upon the party seeking to overturn the [commission's] decision." (Internal quotation marks omitted.) Francini v. Zoning Board of Appeals, 228 Conn. 785, 791,639 A.2d 519 (1994).
"When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Citation omitted; internal quotation marks omitted.)Harris v. Zoning Commission, 259 Conn. 402, 420, 788 A.2d 1239 (2002). "The [decision] must be sustained if even one of the stated reasons is sufficient to support it . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action." (Internal quotation marks omitted.) Bloom v. Zoning Board ofAppeals, supra, 233 Conn. 208.
 DISCUSSION
The conservancy appeals from the commission's decision to approve the applicant's site plan and special permit application. The conservancy raised many issues in its complaint which it failed to brief and are therefore deemed abandoned. See Commission on Human Rights Opportunities v. Truelove v. Maclean, Inc., 238 Conn. 337, 344 n. 11,680 A.2d 1261 (1996) (stating that "[w]here an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived"). The conservancy, however, does raise the following issues: (1) the commission failed to explore alternative plans as required pursuant to § 22a-19; (2) the commission allowed too many water-dependent uses; and (3) the commission's decision is not supported by evidence in the record.
A. Whether the Commission Properly Found that the Proposed Office Project Does Not Detrimentally Impact the Environment Pursuant to § 22a-19.
The conservancy challenges the commission's finding that the office project does not nor is likely to unreasonably pollute, impair, or destroy the public trust in the air, water, or other natural resources of the state. It further argues that the commission failed to consider alternatives when the conservancy presented evidence that a non-trivial degree of harm to the environment did in fact exist. In support of this CT Page 2596 claimed error, the conservancy argues that it has met its burden of production under § 22a-19 (a) and, accordingly, the commission was obligated to consider reasonable and prudent alternatives pursuant to § 22a-19 (b). The conservancy asserts that because the commission did not consider possible alternatives to the proposal, the office project application was improperly approved by the commission.
As a result of the conservancy's intervention under § 22a-19 (a), the commission was required "to consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resource of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." General Statutes § 22a-19 (b); Red Hill Coalition, Inc. v. Town Plan Zoning Commission, 212 Conn. 727, 735, 563 A.2d 1347 (1989). The commission may, however, find that the proposed activity pollutes the environment, but that this pollution is not unreasonable. ManchesterEnvironmental Coalition v. Stockton, 184 Conn. 51, 59-60, 441 A.2d 68
(1981). The question of reasonableness is one of fact, and where the record supports the commission's conclusion that the proposed office project does not violate § 22a-19 (b), the court must sustain the conclusion. Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483,502-03, 400 A.2d 726 (1978). "By its plain terms, General Statutes §22a-19 (b) requires the consideration of alternative plans only where the commission first determines that it is reasonably likely that the project would cause unreasonable pollution, impairment or destruction of thepublic trust in the natural resource at issue." (Emphasis in original; internal quotation marks omitted.) Paige v. Town Plan ZoningCommission, 235 Conn. 448, 462-63, 668 A.2d 340 (1995).
The record supports the commission's finding that the proposed office project does not create a possibility of unreasonable harm to the environment. The conservancy submitted evidence in support of the intervention including extensive testimony and exhibits. (ROR, Exhibits GG, CCC, 29, 30.) The commission, however, decided otherwise. Evidence supporting the commission's decision include the Connecticut department of economic and community development's support of the office project (ROR, Exhibit A); the Connecticut department of environmental protection's support of the office project (ROR, Exhibits S, Z); the office project's consistency with the Fort Trumbull municipal development plan (ROR, Exhibit E); the evidence submitted by the applicants pertaining to the environmental impact and proposed remedial measures (ROR, Exhibits 7, 14, 15); and the testimony presented by David Dickson, senior project CT Page 2597 manager, and James MacBroom, water resource and environmental engineer, as to the possible environmental impact and remedial measures taken in connection with the office project (ROR, Exhibits 26, 27, NN, WW). The court finds that the record supports the commission's decision. It is within the commission's discretion to weigh the credibility of witnesses. Pelliccione v. Planning Zoning Commission,64 Conn. App. 320, 331, 780 A.2d 185, cert. denied, 258 Conn. 915, 782 A.2d 1245 (2001). The commission could reasonably conclude, based upon the record, that there was no evidence indicating that the proposed office project would unreasonably harm the environment. Accordingly, the commission did not have to consider alternatives pursuant to § 22a-19
(b), and the court declines to sustain the conservancy's appeal upon this basis.
B. Whether the Commission Properly Granted the Application and Its Non-Water Dependent Uses.
The conservancy argues that the office project is a non-water dependent use and will therefore adversely impact any future water-dependent uses. It further contends that the commission's decision was not based on any criteria and was improper. The commission agrees that the office project is a non-water dependent use, however, asserts that the project is consistent with the Fort Trumbull municipal development plan and is therefore a proper use for the property. The commission had before it the municipal development plan (ROR Exhibit E); and a letter from the Connecticut department of environmental protection asserting the consistency of the office project with the Connecticut Coastal Management Act and its support for water-dependent uses such as commercial fishing operations (ROR, Exhibit Z). The commission further supported its findings with General Statutes § 22a-92 (b), which does not require only water-dependent uses in coastal management areas. The court finds that the record supports the commission's decision. The commission could reasonably conclude, based upon the record, that the proposed office project was permitted pursuant to General Statutes § 22a-92 and is consistent with the Fort Trumbull municipal development plan.
C. Whether the Commission's Decision Is Supported by Evidence in the Record.
The conservancy makes numerous arguments as to the deficiency of the commission's decision which include: (1) the application was untimely and illegal; (2) the application was improper because it was not submitted as an entire project; (3) the commissioners and city planner are lay persons unqualified to make environmental impact determinations; and (4) the application is inconsistent with the New London plan of conservation and CT Page 2598 development and the Connecticut plan of conservation and development.
The conservancy alleges that the application is untimely and illegal because the municipal development plan has not been unified as mandated by General Statutes § 8-186. This is not a valid argument. "[C]hapter 132 of the General Statutes; General Statutes §§ 8-186 through 8-200b; entitled Municipal Development Projects, pursuant to which the project plan was adopted, provides the statutory framework for the municipal acquisition and improvement of real property for business and industrial purposes. As a general matter, the purpose of this statutory framework is to foster the continued growth of industry and business within the state, by permitting and assisting municipalities to acquire and improve certain property in accordance with the requirements and purposes of chapter 132." (Internal quotation marks omitted.) Avalonbay Communities,Inc. v. Town of Orange, 256 Conn. 557, 569, 775 A.2d 284 (2001). "[A]lthough Chapter 132 does not define the word `unified land areas' the word is often used to describe the united efforts of municipal jurisdictions or multiple state entities." Kelo v. City of New London, Superior Court, judicial district of New London, Docket No. CV 02 0557299 (March 13, 2002, Corradino, J.). The Fort Trumbull property is subject to a municipal development plan. The validity of the Fort Trumbull municipal development plan has previously been decided by this court and will not be revisited. Fort Trumbull Conservancy, LLC v. City of New London, Superior Court, judicial district of New London, Docket No. CV 02 0557775 (January 24, 2001, Hurley, J.T.R.).
The conservancy proceeds to argue that the Fort Trumbull municipal development plan violates General Statutes § 22a-105 (c) because the project was not submitted in its entirety. Again, the argument lacks validity. Section 22a-105 (c) requires a site plan application to include: "a plan showing the location and spatial relationship of coastal resources on and contiguous to the site; a description of the entire project with appropriate plans, indicating project location, design, timing, and methods of construction; an assessment of the capability of the resources to accommodate the proposed use; an assessment of the suitability of the project for the proposed site; an evaluation of the potential beneficial and adverse impacts of the project and a description of proposed methods to mitigate adverse effects on coastal resources." The applicant provided detailed information for all of these requirements in its application for site plan approval and provided additional information, such as a summary of parking special permits, special permit objectives and site plan objectives. (ROR, Exhibits 1, 2, 2a, 5, 9, 10.) The commission could reasonably conclude, based upon the record, that the office project complied with General Statutes § 22a-105 (c). CT Page 2599
The conservancy further argues that the decision is improper because the members of the commission and city planner are lay persons making them unqualified to make a determination as to possible environmental harms based solely upon their lay knowledge. The commission, however, did not rely solely on its knowledge and instead based their decision on the evidence and expert testimony presented at the numerous public hearings. (ROR, Exhibit MMM, p. 3.) The commission heard testimony from Robert Fromer on behalf of the conservancy (ROR, Exhibit CCC); as well as testimony from David Dickson, senior project manager and James MacBroom, water resource and environmental engineer on behalf of the applicant (ROR, Exhibits NN, WW). The commission had before it letters supporting the office project from the Connecticut department of economic and community development (ROR, Exhibit A); and the Connecticut department of environmental protection (ROR, Exhibits S, Z). It further had information from the New London development corporation which stated that the office project was consistent with the Fort Trumbull municipal development plan. (ROR, Exhibit E.) The commission could reasonably conclude, based upon the record, that there was no evidence indicating that the proposed office project would harm the environment.
The conservancy's final argument is that the office project is inconsistent with the New London and Connecticut plans of conservation and development. The record supports the commission's finding of consistency. The New London development corporation approved the office project because of its consistency with the Fort Trumbull municipal development plan (ROR, Exhibit B); the Connecticut department of economic and community development found that the office project was consistent with the conservation and development policies plans (ROR, Exhibit A); and the Connecticut department of environmental protection supported and found that the office project was consistent with the Connecticut Coastal Management Act (ROR, Exhibits S, Z). The commission's decision is reasonably supported by the evidence in the record.
 CONCLUSION
Based upon the foregoing reasons, the conservancy's appeal is dismissed.
 D. Michael Hurley Judge Trial Referee
CT Page 2600